It pleases the Court, my name is Paul Turner. I'm with the Federal Public Defender Office for the District of Nevada. Here this morning representing Kenneth Shiro. I would like to reserve two minutes for rebuttal. I will certainly watch my clock, but if the Court, any directions the Court might like to give me, I'll be happy to take also. As a quick housekeeping item, late yesterday afternoon when I was looking over the case, I happened to suddenly realize that in the excerpts of the closing argument in the 1998 trial, the second trial, that five pages were missing. I checked with my office. Those pages were not in my office. However, someone went over to the courthouse and found the pages. They should have appeared after excerpt of record 1517 and before excerpt of record 1518, and they're pages 115 through 119. I have them here this morning. I've showed them to counsel for the State. I don't know if I could possibly tender them to the Court now, whether I could get leave to file a supplemental. I think it would be simple to do it afterwards. Just give it to the clerk afterwards. I'll do that, Your Honor. With that, Your Honor, this is a case where Mr. Shiro and his lawyer were ambushed by the State of Nevada. A little bit of background the Court, I'm sure, is aware of. Mr. Shiro was originally tried in 1997. The theory of the case then, and not just the theory of the case, but the only information ever filed in the case, indicated that Mr. Shiro committed three acts of sexual assault, the first one being an event alleged to have occurred in 1990 involving a penetration of the penis in the vagina. The second sexual intercourse was specifically identified with respect to count at count, count one. Count three is essentially identical, but it's for events alleged to have occurred in 1994. The middle count, count two, is a count alleging that Mr. Shiro inserted his finger into the vagina of the victim, alleged victim. Again, all of these counts indicate that some object was inserted into the vagina of the victim. Two of them specifically indicate sexual intercourse. The case was tried under the theory that sexual intercourse had occurred. Mr. Shiro defended the case. His defense was that the witness was lying, not telling the truth. Do you agree that under the statute in question that any penetration of the female genitalia would be sufficient to satisfy the statute? Yes, Your Honor, if charged, obviously. Well, it was charged. It was charged, in fact. It wasn't charged in this case, Your Honor. The charge in this case went to the particular subsection of the statute for sexual intercourse or really for entry of an object into a specific piece of anatomy, the vagina. That's the charge in this case. Well, the vagina, though, speaking generically, is not speaking medically. The vagina, insofar as the cases are concerned, could be any part of the female genitalia. You don't agree with that, I take it? I'm sorry, Your Honor. You don't agree with that? I don't agree. I don't agree with that as a general principle, no. Well, your own expert under cross-examination stated that the stating that there has to be an entry into the vagina is a technical reading, but that implicit is the argument that sexual intercourse can occur with any penetration of the female genitalia. Well, that may be from a medical perspective, that may be true. It's not true from the perspective of this statute or of this charge. The statute does indicate, it's interesting, the statute when it defines sexual intercourse says sexual intercourse in its ordinary use. It does not say that with respect to vagina. That term is used with no extra words to define it. Vagina means vagina, I believe, in that statute. And I think that's appropriate for a statutory reading of something that's an anatomical term. But, Dr. Cawthorne, if I'm pronouncing his name correctly, your expert said that many children and many women use only that one word to denote the whole genitalia. And that's your expert. That's not the government's expert. That's correct, Your Honor. That, of course, does not go to the issue of this case, though, I respectfully would say. The issue in this case is what was a proper notice to Kenneth Shiro, not to all the women in the universe or to anyone else, but Kenneth Shiro, because he's the defendant. And Mr. Shiro did not have notice that the term was being used in that manner. He had notice. Did you just acknowledge that if there was any penetration of the female genitalia, it would be sufficient to satisfy the statute? If properly alleged, yes, sir, it would be, I think. Under the statute, if that particular section of the statute was used in the information, it was not. That portion of the statute, it could have been alleged in a more general manner. It was not. It was alleged very specifically as to what was supposed to have happened here. And it was very specific. Each count speaks of an object in the vagina. Two of them speak to a penis, one to a finger. All of them speak to an object in the vagina. That's a separate section of the statute, along with Cunnilingus, along with Fellatio, along with a more liberal interpretation of any entry. There's a separate category for object. And they are saying that an object was in the vagina. But your basic position is, in order for the State to have prevailed in this matter, they had to prove that an object was inserted into the medically defined vagina, not into any other part of the female genitalia. Is that your position? Based on the charge the State made, yes. All right. I understand your position. The State obviously could have moved to amend. It could have moved to amend really at any time up to the case going to the jury. As long as it gave fair notice to the defendant that it was going to move to amend, it did not give any fair notice. It never moved to amend. It still amended that. It didn't move to amend because it was the State's position that any insertion of the penis or the finger into the female genitalia would satisfy the statute. And I'll let them speak for themselves as to their position. Yes. I'm looking at the statute. I think I'm looking at the statute. What subsection are we talking about? Your Honor, it would be the definition is in 200.364. So it says as sexual penetration means, which doesn't necessitate sexual intercourse, right? It says including sexual intercourse. That's correct. All right. And then, so where do you say there's a separate subsection? The subsection, the way I'm reading it, Your Honor, would be sexual penetration means cunnilingus would be one, fellatio would be two, or any intrusion, however slight, that's a subsection here, not alleged in the information. Right. Or, and the word's or again. Yes. Or any object manipulated or inserted by a person into the genital or anal openings of the body. Right. And up until that point, up until the word another, you have no problem. And the only problem is including sexual intercourse in its inordinary meaning, right? Right. Well, in this case, I have a problem because they allege that it's in, that the object was inserted into the vagina. But in terms of the statute, into the genital or anal openings of the body of another would be enough. Right. If alleged in the information, it would be. Obviously, I'm not conceding there was enough evidence to prove that. It's not a subsection of the statute, is what I'm pointing out to you, or even a sub-sentence of the statute. Because with regard to the statute, they met the statute. It's a, it's a, one of the several possible means of which the statute can be violated. Okay. It's a sub-means, for want of a better way to put it. The word means is actually in Nevada law. The state has a duty of pleading either the specific means under Nevada law or no means, saying they don't know the means. They're unknown. They pled the specific means here. But, but phrases like including two-wit sexual intercourse, which is what this indictment said, my understanding is, at least for constitutional purposes, that the case law seems generally to say that doesn't really matter. That, that, that, that something, that when you have a general statement and then a more specific two-wit kind of a statement, that there isn't necessarily a variance if you don't meet the two-wit kind of a statement, as long as you meet the more general one. Actually, here, Your Honor, they, they, they don't use the more general words. They just say, they, they just say sexual penetration. They don't, they don't say the words object. No, I understand. Yeah. They say then to which sexual intercourse. They just go right to the bottom line. Sexual intercourse. All right. What do we do with the, the EDPA issue and the, the, what the state courts did with this? The state court's analysis, Your Honor, was, I think, objectively unreasonable. They, they cited Styrone, which is certainly one of the cases in the family. They, they, they did not cite, Styrone cites Cole. And I believe Cole v. Arkansas is the key, key case here. As interpreted by this course, this court, excuse me, in Shepard v. Reese, they're just, the, the court is wrong when it, when it concludes that the, that the theory of the government, of the state was not changed. It obviously was changed. And I, I see my time is, is about out, Your Honor. But our problem is that wrong isn't good enough, right? It needs to be unreasonably wrong. They're, they are, they are totally wrong in saying the, the theory was not changed. The, the record makes it plain that the theory was completely changed in the, in the closing argument. Well, you know, I, I, I closely read the record concerning your reply, your, your position that the government in its reply, rebuttal at summation, changed its theory that there was no penetration but merely a rubbing of the, of the genitalia. My problem is that I think that you quoted selectively in your brief, you say this is not a vaginal sexual intercourse as alleged in the information. But what you left out was that you read the prosecutor's statement out of context. The, Shiro himself said that he put his penis between the labia, between the lips, up against the hymen, or at least that was the theory that, that the, that government was pursuing. And when read in context, this was not merely a, a, a, a rubbing, it was actually a penetration of the genitalia. How do you get away from that position? Really, Your Honor, because, because the information indicates that it had to be a penetration of the vagina. In other words, anatomical, the medically speaking vagina. Well, I think, I think the common, frankly, I, I, I think a common usage of fair reading of the word vagina would mean that the vagina, just like if you said somebody's right arm, you'd mean their right arm. I mean, I mean, I think that's a fair, logical reading of it. If you said their head, you'd mean their head. The vagina is a, is a piece of anatomy. It's, it's not some vague term. So there would have to be, in what you're saying, in effect, there would have to be deep penetration of the vagina itself, and not the outer portions of the genitalia. Some penetration of the vagina. And a chance to defend. The whole case turns on did he have a fair chance to defend. And, of course, we say he did not have. He put his whole defense into what they said happened. Well, his whole defense was actually that nothing happened. Well, his whole defense was that the, the lady was, the young lady was lying. And it was impossible what she said. She, and, and that was a fair defense, appropriate defense to make it. But when, when suddenly the government, the state starts saying what she said isn't true, and they did, at the end they're saying, well, sure, she's, she really didn't mean that. They back way off their own witness because they realize they're losing this case. And they come for a new theory that their witness, although wrong, it's understandable. She's a child. That's not the way they, they pled this case. That's not the way they pursued this case. He had no chance to defend on that basis. His defense could have changed dramatically. If that, if this was, if this was the type of case that they closed with, he would have had a different chance at a defense. He didn't get any chance at a defense. He's locked in. Well, was it only you on cross-examination which got the, the, the daughter to say that there was deep penetration? The State's position all along was there was penetration, but they are, they never say anything about deep penetration. Your cross-examination of her was to the effect that there had to be deep, that there was deep penetration to which she said there was. Your Honor, I, I certainly respect your re-reading of the record very much. I, I would say, though, that throughout this case, the word intercourse appears endlessly, constantly, and the statute says intercourse in its ordinary meaning, ordinary meaning. Suddenly, that word disappears in the, in the closing argument at the second trial. You don't see that word anymore. It's gone. This case changed quite a bit. Mr. Schauer didn't get a chance to defend himself. He had very serious charges. He deserved a chance to have his day in court. His whole defense was turned into a joke. Can you imagine how his lawyer felt sitting at that, at the table, and suddenly your defense is a complete farce, because your defense, your defense goes to something they now say didn't even happen. They, they just, they couldn't tolerate their own witness. They had to back off. Very clever, and it succeeded. But this is the time that we hope that it will be stopped, Your Honor. Thank you. Thank you very much, counsel, for a useful argument. Counsel. Good morning, Your Honors. Dennis Wilson from the Attorney General's Office, on behalf of the appellee. Mr. Scheer's allegations of constructive amendment and substantial variance rest on one sentence that was said by the prosecutor during her closing rebuttal argument. And that sentence, that one sentence, says he can rub, he can dry hump, he can move around, and he can stipulate his penis and get sexual gratification. Well, that's not exactly right. I mean, it's true that he's overstated it at various points, but, and relied on the other sentence having to do with the other witnesses and so on. But leaving all that aside, it does appear that the argument at the closing was that there was penetration of sort of the entry to the female genitalia, but not the vagina. The technical vagina. And the question is, does that matter? I mean, that was the argument at closing argument. Do you agree with that? Leaving the rubbing aside and all that. Your Honor, I think the closing argument was in response to their allegation that the defendant's penis was surging. I understand that. It was in response to that, and that was the argument. So the question is whether that is a variance or isn't a variance. And that would turn on two questions. The indictment does use the word vagina, and it also uses the word sexual intercourse. There's no statutory problem here. That's plain. But the question is, is there, are those words in the indictment sufficiently binding that not proving them up in a technical sense means that you have a variance? That's the issue, right? Or an amendment. I believe that's what they're claiming, Your Honor. The information charged that he sexually assaulted his daughter by subjecting her to sexual penetration, to which sexual intercourse. Sexual penetration of? Sexual penetration colon to. To wit. It doesn't say sexual penetration. Sexual intercourse colon to wit. It does say sexual penetration colon to wit. Sexual intercourse by inserting his penis into her vagina. Okay. So that's the word sexual intercourse, but it uses the word vagina. It covers everything. It covers the assault, the penetration, the intercourse, and the insertion of his penis into her vagina. Did he have fair notice when the information claims that there was intercourse to wit the, with the vagina, when your proofs are that at best he inserted his penis in the labia? Well, Your Honor, that goes to the definition that the experts talked about. The defense's expert, as you pointed out earlier, clearly said that the general understanding of that term is the outer labia, the inner labia, the vestibule, the pouch-like vestibule up to the hymen. And that was the whole point of the expert's testimony, saying that there was rubbing on, there was a thinning of the hymen that could only be caused by rubbing of a penis against that hymen. So I think that clearly put him on notice that that was the State's theory. The rubbing didn't change the theory. The rubbing was part of the theory. Rubbing is part of the theory, but was he unfairly constitutionally deprived of defense when he thought he was going to have to defend against deep intercourse and not merely rubbing of the outer genitalia? And that was never alleged, Your Honor. The word deep was never alleged. Well, the vagina is deep. It's beyond the lips of the genitalia. The vaginal canal is defined by the medical experts as that part that is inside, compared to the outer genitalia and the inner genitalia. And? So I think when he's charged with penetrating his daughter, I don't believe that he could have penetrated the vaginal canal. Well, that was their defense. Right. But that wasn't the charge. The charge was any intrusion of ever slight, including sexual intercourse. If you read the statute, that's what it says. It doesn't say including. It says the statute says including. The information says to wit, meaning I understand that means in this manner. I do this. Right. It says to wit sexual intercourse by inserting his penis into her vagina. That's what the statute says. And that's what he was. It's not what the statute says. It's what this says. Well, excuse me. That's correct. The statute doesn't say that. It would have been fine if he had alleged it in the words of the statute, but he didn't. Your Honor, that's correct. That's what the information says. Right. That's what I meant to say. Well, what in your view is the issue that we have to resolve? Whether this information is satisfied by merely showing that there was some penetration of the genitalia, is that your basic position? Yes, Your Honor. He was unnoticed. He was being charged with putting his penis into his daughter's vagina. And that's what the whole evidence was. That's the entire female genitalia, your position. That's what the expert says. Was he unnoticed that when you said vagina, that you meant any portion of the female genitalia? I mean, can he reasonably conclude that, well, you have to prove that he entered the vagina? I think he was unnoticed of that, Your Honor. I don't think that it could have happened. I don't think that this, although it came out in testimony, they did talk about that through the expert. What does this mean? And it's clear that the everyday meaning that everybody would use, that the prosecutor used, that the State used when it was charged, is the entire female genitalia. So he was clearly unnoticed of it. And that's what the Nevada Supreme Court found. Basically, the Nevada Supreme Court said, although the terms used by the State in closing arguments are not identical to those used in the information, the language used in the closing argument is consistent with the information and does not constitute either a substantial variance or an amendment. The Court found also that the prosecutor's statements did not change the theory of the assault to mere rubbing. The burden of the appellant is to show that that ruling by the Nevada Supreme Court was objectively unreasonable, even if there was a variance, as it was stated. And as the district court, the Federal District Court judge stated, even if there was a variance, you have to determine if the defendant's substantial rights were affected by that variance. If they were, it's a prejudicial variance. If they weren't, he was fully informed of what he was being charged with. But your position is that there was no variance in the first place, I take it? I would say that, yes. That's correct, Your Honor. There was no variance. This rubbing was part of the evidence. It was a circumstantial evidence of the sexual assault, and that's why it came up. So he was – there was no variance, but even if there was a variance, that variance was not prejudicial because his substantial rights were not affected. Those are two things under the purpose of the information. Was he fully informed? Did he know what he was being charged with? Yes. Is there any possibility that he could be subject to a second prosecution because of what was stated in the information? No. He couldn't be. So based on that, there was no substantial prejudice to his rights. Are you saying that his defense would have been the same had the information followed the words of the statute? No. I think if we ask ourselves – and the answer to that is yes. If we ask ourselves how could the prosecution have better stated the information, the only thing I think they could have done was take out sexual intercourse and just said the penetration was when he inserted his penis into her vagina. So maybe that would have helped a little bit, but it wouldn't have changed the charge. He knew what he was being charged with. He knew what he had to defend against. So he was fully informed of the charges against him. I'm not sure how we could more fully inform him. I'm not sure how the prosecution could have done that, the alleged sexual assault, sexual penetration, sexual intercourse and insertion of the penis into his daughter. That's on your theory that the ordinary meaning of vagina includes all the female genitalia. And I think that's what everybody – if you asked everybody except maybe a doctor what that meaning is, they would say that's the meaning. And does that mean, therefore, that if that's not the meaning, then it's okay to insert a penis into the inner labia, into the outer labia, into the vestibule. That's all right. You have to prove that it went into the vaginal canal. Is that what we're saying that we'd have to put him on notice of? And that wasn't the theory of the case. They didn't say that it went into the vaginal canal. They couldn't prove that because of the size differences and the young age of the child. So he was clearly on notice of what he was being charged with. Okay. Thank you very much, counsel. Counsel, I will give you a minute. Go ahead. I've totally forgotten. Although the expert indicated that there was sort of a – some people in the community might interpret vagina more broadly. She said that's wrong. That's wrong. To put a man in prison for the rest of his life on something like that that's wrong, that can't be right. The doctor said it was medically wrong. But it's commonly understood that when referred to the vagina, they're not referring to the vagina canal alone, generally speaking. I understand, Your Honor. I think that your stronger points really don't go to what's in the information so much as what the understanding was at trial. I mean, if you tried – the information was at least ambiguous on this point, given that there is different usage. It's really what developed – what meaning developed during the trial as it was going on. I think that may well be correct, Your Honor. Nothing changed at trial until we get to the closing. You see, they had a full earlier trial. The rubbing never came up. None of this stuff. They had a whole trial. If everything was so simple and straightforward, why in the world didn't it come out in the first trial? Obviously, an awful lot of people, including – Yes, you see, his defense was that it never happened. So you therefore never got into a debate about what happened because he said it never happened. I understand what you're saying, Your Honor. But it seems odd that the State would find this very simple. But it would only become simple 98 percent of the way through a second trial. Then it becomes simple when you want a conviction that badly. But a man didn't get his day in court here. That's the problem. Thank you very much. Thank you, Your Honor. I appreciate your honor. All right. The case of Schirra v. Farwell is submitted.
judges: D.W. Nelson, Cowen Berzon